IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY, | |
| Plaintiff, | CIVIL ACTION NO. 12-3629 |
| v. | |
| BRYAN MILLER, BEATRICE WAGGAMAN and BRICE WAGGAMAN | |
| Defendants. | |

## OPINION

**Slomsky, J.**  **March 20, 2013**

### I. INTRODUCTION

This case arises out of an insurance dispute. An insurer is seeking a declaration that its insured contractor is not covered under a commercial general liability policy for faulty workmanship. The underlying dispute in this matter involves a couple who bought a home from the insured contractor and filed a lawsuit against him for his failure to repair leaks at the property in accordance with the agreement of sale and an addendum to the agreement.

Plaintiff State Auto Property and Casualty Insurance Company filed this lawsuit under the Declaratory Judgment Act against Bryan Miller, the insured contractor, and Beatrice and Brice Waggaman, the homeowners (collectively "Defendants"), seeking a declaration that State Auto does not owe a duty to defend or a duty to indemnify Miller. On August 24, 2012, State Auto filed a Motion for Judgment on the Pleadings. (Doc. No. 8.) The Motion for Judgment on the Pleadings is now ripe for disposition and will be granted for reasons that follow.[1]

---

[1] In deciding the Motion for Judgment on the Pleadings, this Court has considered the following: the Complaint for Declaratory Judgment (Doc. No. 1), the Waggamans' Answer (Doc. No. 6),

## II. FACTUAL BACKGROUND

### A. The State Auto Insurance Policy

State Auto issued Miller a "Series One Contractors Policy" of insurance for commercial general liability coverage, under Policy Number SOC 2123679 (the "Policy"). The policy period was from April 30, 2005 to April 30, 2006. (Doc. No. 8-2 at 27.) Section I of the Policy, entitled "Insuring Agreement," provides, in relevant part, as follows:

> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> **(1)** The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"
>
> **(2)** The . . . "property damage" occurs during the policy period. . . .

(Id. at 33.)

Finally, the Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. No. 8-3 at 3.)

On April 30, 2006, the Policy expired. (Doc. No. 8-3 at 26.) On May 7, 2006, State Auto sent Miller a notice of expiration that stated as follows:

---

Miller's Answer (Doc. No. 7), Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 8), the Waggamans' Response to the Motion for Judgment on the Pleadings (Doc. No. 11), Miller's Response to the Motion for Judgment on the Pleadings (Doc. No. 12), and the arguments of counsel at the November 1, 2012 hearing.

> WE HAVE NOT RECEIVED YOUR PAYMENT. SINCE YOU HAVE DECIDED NOT TO ACCEPT OUR OFFER TO RENEW, THIS NOTICE CONFIRMS THAT YOUR POLICY EXPIRED. IF YOU WISH TO ACQUIRE REPLACEMENT COVERAGE, PLEASE CONTACT YOUR AGENT.
>
> DATE OF NOTICE: 05/07/2006
> EXPIRATION WAS EFFECTIVE: 4/30/2006 AT 12:01 am
> REASON FOR EXPIRATION: YOUR REJECTION OF OFFER TO RENEW
>
> AS AN ADDITIONAL SERVICE TO YOU, WE WILL REINSTATE YOUR POLICY IF WE RECEIVE PAYMENT BY 05/19/2006. IF WE DO NOT RECEIVE PAYMENT BY THIS DATE, WE WILL SEND YOU NOTICE CONFIRMING EXPIRATION.

(Id. at 26.)

Miller did not send a payment to reinstate the Policy. (Id. at 25.) On May 19, 2006, State Auto sent Miller a Confirmed Expiration notice which stated, in relevant part, as follows:

> AS YOU WERE PREVIOUSLY NOTIFIED, YOUR POLICY EXPIRED AND ALL LIABLIITY OF THE COMPANY UNDER THIS POLICY CEASED ON THE EXPIRATION DATE. THIS IS MERELY AN INFORMATIONAL NOTICE TO CONFIRM THE EXPIRED STATUS OF YOUR POLICY.

(Id. at 25.)

### B. The Underlying Lawsuit

The facts pertaining to the underlying action are alleged in the complaint filed in state court. (Doc. No. 11-2.) On June 16, 2006, approximately six weeks after the Policy expired, Miller and the Waggamans executed an agreement for the sale of real estate. (Doc. No. 11-2 at 16.) Miller sold the Waggamans a three-story family row home located at 1459 East Montgomery Avenue, Philadelphia, Pennsylvania 19125 (the "Property"). (Doc. No. 11-2 at 16; Doc. No. 11 at 5.) Miller, a contractor, renovated the Property and represented to the Waggamans that the renovations were so extensive that the house qualified as new construction. (Doc. No. 8 at 1.) The settlement date listed on the agreement of sale was August 18, 2006. (Id.)

3

On the same day, Defendants executed an "Addendum/Endorsement to the Agreement of Sale" (the "Addendum"). (Id. at 21.) In the Addendum, Miller contracted to repair a roof leak at the Property.[2] (Doc. No. 8-2 at 21.) The Addendum allotted Miller forty-five days from the date of the agreement to have a reputable contractor complete the repairs. (Doc. No. 8-2 at 21.)

Miller did not hire a contractor to repair the roof within the allotted time. (Doc. No. 8 at 1; Doc. No. 1 at 4.) In May 2008, Miller agreed to make the necessary repairs[3] in exchange for an "Agreement and Release." (Doc. No. 1 at 4.) The Agreement and Release required the repairs to "begin within a reasonable time after the full execution of this Agreement and Release and shall proceed in a timely manner until completion." (Doc. No. 8-2 at 24.) Once more, Miller did not hire a contractor to perform the repairs. (Doc. No. 1 at 4.) Ultimately, the Waggamans hired other contractors and paid them $45,273 to make necessary repairs. (Id.)

On August 18, 2010, the Waggamans filed a lawsuit in the Philadelphia Court of Common Pleas against Miller (captioned Waggaman v. Miller, August Term 2010, Docket No. 02684). (Doc. No. 8-1 at 22.) The Waggamans alleged claims of Breach of Contract, Breach of Express Warranty, Breach of Implied Warranty of Merchantability, Breach of Implied Warranty of Fitness for a Particular Purpose, and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("PUTPCPL"). (Doc. No. 8-1 at 24-30.) On January 6, 2011, the Waggamans filed an Amended Complaint adding a negligence claim. (Doc. No. 8-1 at 24-30.) The Waggamans sought damages of $45,273 for roof repairs, plus 6% statutory interest from the date of the Addendum until the date of judgment, attorneys' fees, treble damages, penalties,

---

[2] Miller also agreed to repair a leak from the front deck door and to replace the crystal in the foyer chandelier. These repairs are not in issue in this case. (Doc. No. 8-2 at 21.)

[3] Miller agreed to repair the roof and windows. The windows were leaking because portions of the house designated for windows were covered with drywall. Leaks damaged the drywall. (Doc. No. 1 at 4.)

4

interest available under the PUTPCPL, and such other relief the Court may award. (Doc. No. 11 at 5, Doc. No. 1 at 5.) The court set a September 2012 trial date. (Doc. No. 11 at 6.)

On February 22, 2011, counsel for Miller sent a letter to State Auto enclosing the underlying complaint and requesting coverage for Miller. (Doc. No. 8-3 at 28.) On April 12, 2011, State Auto responded to the letter and agreed to defend Miller in the underlying action under a reservation of rights. (Id. at 34.)

On June 27, 2012, Plaintiff State Auto filed this action against Miller and the Waggamans seeking a declaration that it does not owe a duty to defend or a duty to indemnify Miller. Both the Waggamans and Miller filed Answers to the Complaint. (Doc. Nos. 6, 7.) On August 24, 2012, State Auto filed a Motion for Judgment on the Pleadings. (Doc. No. 8.) Both Defendants filed Responses to the Motion.

### III. STANDARDS OF REVIEW

#### A. Standard to Resolve Motion for Judgment on the Pleadings

"Pursuant to Federal Rule of Civil Procedure 12(c), judgment on the pleadings will be granted only if 'the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law.'" Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010) (quoting Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005)). "A party may move for judgment on the pleadings '[a]fter the pleadings are closed — but early enough not to delay trial.'" Id. (quoting Fed. R. Civ. P. 12(c)).

In deciding the motion, "the court considers the pleadings and attached exhibits, undisputedly authentic documents attached to the motion . . . if plaintiffs' claims are based on the documents, and matters of public record." Id. (citations omitted). "The court must view the

facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Id. (internal quotations and citations omitted).

### B. Standards Governing an Insurer's Duty to Defend and Duty to Indemnify

Under Pennsylvania law, "[a]n insurer's duty to defend is broader than its duty to indemnify." Am. and Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 540 (Pa. 2010) (citations omitted).[4] An insurer must defend the insured "if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy." Id. at 609 (citations omitted). Determining "whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint." Id. (citations omitted). In analyzing a complaint, "the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured." Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999) (internal citation omitted). Therefore, "the duty to defend is not limited to meritorious actions . . . [and] extends to actions . . . as long as there exists the possibility that the allegations implicate coverage." Id. at 610.

If the insurer determines that the underlying facts "would support a recovery covered by the policy, then coverage is triggered and the insurer has a duty to defend until such time that the claim is confined to a recovery that the policy does not cover." Gen. Acc. Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997) (citing to Pac. Indem. Co. v. Linn, 766 F.2d 754 (3d Cir.

---

[4] Miller is a Pennsylvania insured as listed on the Direct Bill which is attached to the Policy and lists basic information about the policy such as the policy number, expiration date, name of the insured, agent and state. (Doc. No. 8-2 at 32.) The location of the property damaged is in Pennsylvania. The parties do not dispute that Pennsylvania law applies to this case which has been filed in federal court based upon diversity of citizenship jurisdiction.

6

1985). "The duty to defend also carries with it a conditional obligation to indemnify in the event the insured is held liable for a claim covered by the policy." Id.

IV. ANALYSIS

The Court will grant Plaintiff's Motion for Judgment on the Pleadings for two reasons. First, the Policy only covers property damage occurring during the policy period. The damage to the home occurred after the Policy expired. Second, the Policy provides coverage for an "occurrence," which is defined as an accident. There was no "occurrence" within the meaning of the Policy because the property damage was caused by faulty workmanship and not an accident.

A. The Property Damage Was Sustained After Policy Period

"[A]n insurer is not required to defend a claim when it is apparent on the face of the Complaint that none of the injuries fall within the purview of the insurance policy." Peerless Ins. Co. v. Brooks Sys. Corp., 617 F. Supp. 2d 348, 356 (E.D. Pa. 2008) (citing Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888 (Pa. 2006)).

The plain language of the Insuring Agreement in the Policy states that State Auto "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." (Doc. No. 8-2 at 33.) The Policy covered property damage that "occurs during the policy period." (Doc. No. 8-2 at 33.) Here, the Policy expired on April 30, 2006. (Doc. No. 1 at 76.) The issue, therefore, is whether the property damage alleged by the Waggamans occurred during the policy period from April 30, 2005 to April 30, 2006.

Courts interpreting Pennsylvania law have adopted the "effect" test to determine when property damage occurs for purposes of resolving insurance disputes. D'Auria v. Zurich Ins. Co., 507 A.2d 857, 861 (Pa. Super. Ct. 1986). Under the effect test, "an occurrence happens

when the injurious effects of the negligent act *first manifest themselves* in a way that would put a reasonable person on notice of injury." Id. (emphasis original) (citing Appalachian Ins. v. Liberty Mut. Ins. Co., 676 F.2d 56 (3d Cir. 1982)). In further explaining the effect test, D'Auria stated, "an 'occurrence' happens when *injury* is reasonably apparent, *not* at the time the *cause* of the injury occurs. The cause and the injury happen at very distinct times." D'Auria, 507 A.2d at 862 (emphasis original). The Third Circuit explained the rationale behind the effect test as follows:

> We based our decision on our belief that defining the timing of an occurrence with reference to the moment at which injurious effects take place would best protect the expectations of the parties entering into an occurrence-based insurance contract.

City of Erie v. Guar. Nat'l Ins. Co., 109 F.3d 156, 162 (3d Cir. 1997).

In this case, the injurious effects of Miller's negligence could not have manifested themselves to the Waggamans prior to their purchase of the Property because the date of purchase is the earliest time the Waggamans could reasonably have been on notice of the injury — the damage to the property. Therefore, the occurrence in this case could not have taken place until August 18, 2006, the date of settlement, which is after the expiration of the policy on April 30, 2006.

In fact, the Waggamans acknowledge that their injury began on the settlement date because they seek damages occurring on or after August 18, 2006. This acknowledgement further supports the proposition that there were no injurious effects before August 18, 2006. Thus, the Waggamans' lawsuit does not seek to recover for injury occurring within the policy period and therefore the Policy does not provide coverage in this case.

Despite their failure to make a claim during the policy period, the Waggamans still argue that because Miller purchased the Property in 2005 and completed the renovations to the Property prior to the date the agreement of sale was executed, some of the property damage must

8

have occurred during the policy period. (Doc. No. 11 at 16-17.) Because these facts are not alleged in the four corners of the underlying complaint filed by the Waggamans, this Court cannot consider them in making a decision.

Even if the Court considers this argument when viewing the facts in the light most favorable to the Waggamans, the time when the faulty workmanship or property damage took place is not relevant under the effect test. The argument of the Waggamans about using the date of the repairs as indicating the appropriate date of injury conflates the cause of the property damage with the manifestation of the injury. The effect test requires this Court to consider when the injury was reasonably apparent to the injured party, not when the damage was caused. D'Auria, 507 A.2d at 861. Nothing in the underlying complaint suggests that the roof leak was reasonably apparent to the Waggamans — the injured party — before the Policy expired. (Doc. No. 8-1 at 21-31.) Therefore, the Waggamans did not suffer an injury during the policy period and State Auto has no duty to defend or indemnify Miller.

### B. The Property Damage Was Not an "Occurrence"

The second reason that coverage is barred in this case is because the property damage alleged does not constitute an "occurrence" within the meaning of the Policy. The Policy provides coverage for property damage arising from an "occurrence." (Doc. No. 8-2 at 33.) The Policy defines an "occurrence," in relevant part, as "an accident." (Id. at 3.)

While the Policy does not define accident, "[w]ords of common usage in an insurance policy are construed according to their natural, plain and ordinary sense." Kvaerner, 908 A.2d at 897 (internal citation omitted). In Kvaerner, the Supreme Court of Pennsylvania analyzed whether a claim of faulty workmanship constituted an "occurrence" under commercial general liability policies. Id. The policy at issue in Kvaerner defined an "occurrence," in relevant part,

as an "accident." Id. In interpreting the term "accident," the court looked to the ordinary usage of the word, defined in the dictionary as an "unexpected undesirable event," or "something that occurs unexpectedly or unintentionally." Id. at 898-99 (citation omitted). The court found "[t]he key term in the ordinary definition of 'accident' is 'unexpected.' This [term] implies a degree of fortuity." Id. at 898. The court in Kvaerner therefore held as follows:

> We hold that the definition of "accident" required to establish an "occurrence" under the policies cannot be satisfied by claims based upon faulty workmanship. Such claims simply do not present the degree of fortuity or its common judicial construction in this context. To hold otherwise would be to convert a policy for insurance into a performance bond. We are unwilling to do so, especially since such protections are already readily available for the protection of contractors.

Id. at 899.

The Third Circuit relied on the Kvaerner holding in Specialty Surface International, Inc. v. Continental Casualty Co., 609 F.3d 223, 227-28 (3d Cir. 2010). In Specialty Surface, an insured contractor allegedly failed to properly install synthetic turfs on school athletic fields causing failures of the subdrain system under the turf. Id. at 227-28. As a result, water leaked, creating depressions and dips on the playing surface, which made it "unstable." Id. at 228. The court held:

> In order for a claim to trigger coverage, there must be a causal nexus between the property damage and an "occurrence," *i.e.* a fortuitous event. Faulty workmanship, even when cast as a negligence claim, does not constitute such an event; nor do natural and foreseeable events like rainfall.

Id. at 231. In addition, the court held that "damages that are a reasonably foreseeable result of the faulty workmanship are also not covered under a commercial general liability policy." Id. at 239 (citations omitted).

In this case, the faulty workmanship and resulting property damage lack the requisite fortuity of an accident to be considered an occurrence within the meaning of the Policy. Just as

10

the faulty workmanship in Specialty Surface caused leaks that damaged the athletic field property, the faulty workmanship of Miller is alleged to have caused the leaks that damaged the Property. Both the faulty workmanship and resulting property damage alleged in this case lack the requisite fortuity to be considered accidents. Because Miller's faulty workmanship and the consequential property damage are not accidents, they are not "occurrences" covered under the insurance Policy in this case.

Moreover, the costs incurred by the Waggamans in hiring someone to repair the roof were predictable and expected in order to repair the property damage. Because these consequences lacked the "requisite fortuity of an accident" they are not an "occurrence" covered under the insurance Policy.[5]

## IV. CONCLUSION

For reasons set forth above, State Auto's Motion for Judgment on the Pleadings will be granted. An appropriate Order follows.

---

[5] The Court has examined the underlying complaint filed by Plaintiff in the Philadelphia Court of Common Pleas. The facts alleged in the underlying complaint do not allege an "occurrence" that potentially falls within the Policy's coverage. Thus, there is no duty to defend or indemnify in this case. D'Auria, 507 A.2d 857, 861-62 (Pa. Super. Ct. 1986).

11

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>BRYAN MILLER, BEATRICE WAGGAMAN and BRICE WAGGAMAN,<br><br>　　　　Defendants. | CIVIL ACTION<br>NO. 12-3629 |

# ORDER

**AND NOW**, this 20th day of March 2013, upon consideration of Plaintiff State Auto Property And Casualty Insurance Company's Motion for Judgment on the Pleadings (Doc. No. 8), Defendants' Responses (Doc. Nos. 11, 12), the arguments of counsel at the November 1, 2012 hearing, and in accordance with the Opinion of the Court issued this day, it is **ORDERED** that:

1. Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 8) is **GRANTED**.

2. Judgment is entered in favor of Plaintiff State Auto Property And Casualty Insurance Company and against Defendants Bryan Miller, and Beatrice and Brice Waggaman.

3. The Clerk of Court shall close this case for statistical purposes.

　　　　　　　　　　　　　　　　　　BY THE COURT:


　　　　　　　　　　　　　　　　　　/s/ Joel H. Slomsky
　　　　　　　　　　　　　　　　　　JOEL H. SLOMSKY, J.